# `UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

AMAN SINGH,

        **Plaintiff,**

   **v.**                      **Case No. 14-CV-837**

ADAM GEGARE, et al.,

        **Defendants.**

## ORDER

Pro se plaintiff Aman Singh is a former Wisconsin state prisoner. He filed this lawsuit under 42 U.S.C. § 1983 alleging violations of his civil rights while incarcerated at the Sturtevant Transitional Facility (STF) and the Racine Correctional Institution (RCI). The defendants have filed a motion for summary judgment and Singh has filed a motion for partial summary judgment. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. The case was assigned to this court according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72 (E.D. Wis.), and the parties have consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

# FACTS

The facts are taken from the Defendants' Proposed Findings of Fact (DPFOF) (ECF No. 19), the Defendants' Supplemental Proposed Findings of Fact (DSPFOF) (ECF No. 46), and from Singh's Supplemental Proposed Findings of Fact (PSPFOF) (ECF No. 49). Singh also filed Proposed Findings of Fact (PPFOF) (ECF No. 42). However, those facts do not cite to evidentiary materials in the record. Thus, the court will not consider them. *See* Fed. R Civ. P. 56(c), Civil L.R. 56(b)(1)(C) (E.D. Wis.).

## A. Parties and Claims

Singh was a Wisconsin state prisoner incarcerated at STF and RCI. He alleges that he received a conduct report and was transferred from STF to RCI in retaliation for a letter he wrote to another inmate that included statements about a possible escape attempt, gambling, and selling services for profit to other inmates; that he was deprived of due process during the hearing on the conduct report; that he was housed in unconstitutional conditions of confinement at RCI; that he was denied access to the courts while at RCI; and that he was denied religious freedom. Although the complaint advances an equal protection claim, Singh has clarified that he is not pursuing such a claim. (ECF No. 39 and 40 at 8.)

The defendants are RCI/STF Captain Adam Gegare, RCI Lieutenant Jeremy Gloudemans, STF Corrections Center Superintendent Lisa Avila, RCI Offender Classification Specialists Melissa Karpinski and Kimberly Marks, STF Segregation

2

Property Officer Stephanie Kline, STF Social Worker Michael Burman, RCI Captain Lucas Weber, STF Property Supervisor Rick Freeze, RCI Security Director Jason Aldana, RCI Corrections Unit Supervisor Michael Howard, former RCI Warden John Paquin, current RCI Warden Paul Kemper, Wisconsin Department of Corrections (DOC) Division of Adult Institutions Administrator Cathy Jess, DOC Secretary Edward Wall, and RCI Operation Program Associate Nancy Padgett.

### B. Conduct Report 1955474

On June 4, 2012, Captain Gegare received a letter signed by Singh, written to another inmate, that contained statements about possible activities in violation of institution rules and policies. (ECF No. 19, ¶22.) The letter is dated March 22, 2012, and the letter's envelope is post-marked April 11, 2012. (ECF No. 24-1 and 2.) On the first page of the letter, Singh stated:

> I'm the boss of this typewriter bro. People saw what I do with this thing and they be paying me to type up shit for them… no one will play me in chess for canteen… STF really sucks.

(ECF No. 24-1, ¶9.) Singh further states on page two of the letter:

> I work over at the RCI garage. Dude, if I REALLY wanted to escape, it wouldn't be that hard. For an hour every day I walk the perimeter. Going around the outside of RCI, OUTSIDE the fence… Jesus Christ, if I didn't have work release or the freaking appeal to hope for, I would be across the street and on a train and see you never DOC!

(ECF No. 24-1, ¶10.) On page three, Singh states: "I really think I might walk off if I don't get some love on appeal. We'll see." (ECF No. 24-1, ¶11.)

Captain Gegare investigated the letter. (ECF No. 19, ¶23.) Singh was placed on temporary lock-up pending investigation of the letter and the conduct report process. (ECF No. 19, ¶24.)

Captain Gegare found that "Singh was working on an appeal and that he did have a job at the RCI garage at around the time the letter was written." (ECF No. 19, ¶30.) Gegare took Singh's statement as a threat that he was preparing to engage in an escape attempt if his appeal was not decided in his favor. (ECF No. 19, ¶31.) Incidents involving statements of escape are taken very seriously at STF and are routinely addressed and investigated. (ECF No. 19, ¶32.)

On June 5, 2012, Captain Gegare issued Singh Conduct Report 1955474 for violation of Wis. Admin. Code §§ DOC 303.22A, Escape (attempt); DOC 303.32, Enterprise and Fraud; and DOC 303.60, Gambling.[1] (ECF No. 19, ¶33.) Supervisor Avila decided that the conduct report could proceed as a major offense. (ECF No. 19, ¶34.)

On June 11, 2012, a disciplinary hearing was held. (ECF No. 19, ¶35.) Lieutenant Gloudemans was the hearing officer. (ECF No. 19, ¶36.) Singh, who was present at the hearing, admitted to writing the letter but stated that he did not understand what he was being charged with. (ECF No. 19, ¶38.) Singh further stated:

---

[1] All citations to the Wisconsin Administrative Code DOC Ch. 303 refer to the version applicable at the time of Singh's conduct report, DOC Register December 2006 No. 612.

I didn't create a plan. It was light hearted and said if I really wanted to. If I really wanted to escape I wouldn't have quit that job. The reason I left is because I was the target of racial harassment. This letter is at least 3 months old. At no point did I have any actual plans to escape. Mrs. Lemke can confirm I never walked off or anything like that. There was nothing specific stating I was going to do it. I just said if I wanted to, I could. I had no plans to escape and the last 3 months have demonstrated that, and so does the fact that I removed myself from that job. I never gambled while at STF. This is just talk in a letter and nothing more. I never took anything from any inmate who I typed things for. I refused payment from the inmates that offered to pay me for typing things up for them.

(ECF No. 25, ¶10; No. 24-2 at 6.)

After reviewing the evidence and testimony, Lieutenant Gloudemans found the conduct report to be accurate and credible. (ECF No. 19, ¶39.) He made his decision based on the following:

- Per the DOC 303 rulebook: "any inmate who does or attempts to do any of the following without permission is guilty of an offense: leaves an institution, leaves the custody of a staff member while outside of the institution, does not follow the inmate's assigned schedule, leaves the authorized area to which the inmate is assigned."

- Based on the letter typed and signed by Singh, it was clear that he was having thoughts of escaping, or attempting to escape from STF's custody. Singh specifically wrote "I work over at the RCI garage. Dude, if I really wanted to escape it wouldn't be that hard. I walk the perimeter, going around the outside of RCI." Singh further wrote "Jesus Christ, if I didn't have work-release or the appeal to hope for, I would be across the street and on a train and see you never DOC!" Lastly Singh wrote "Fuck bro, prison really sucks. I really think I might walk off if I don't get some love on appeal. We'll see."

- These thoughts expressed by Singh showed that he had previous thoughts of escaping and even developed a plan on how to execute his escape attempt.

• These comments are not condoned within an institutional setting.

• Singh admitted to writing the letter containing thoughts and actions of how to escape from STF.

• Singh stated in the letter: "I'm the boss of this typewriter bro. People saw what I do with this thing and they be paying me to type up shit for them." Clearly stating he profited from other inmates due to his abilities to use his typewriter.

• Any inmate who engages in a business or enterprise, whether or not for profit, or sells anything except as specifically allowed under other sections is guilty of an offense.

• Singh further stated in his letter: "No one will play me in chess for canteen in the whole joint. Man, I burned that one up quick when I beat this guy 10 times in a row, a buck a game, in about an hour."

• Any inmate who is involved in gambling, gambles or possesses any gambling materials is guilty. "Gambles" includes betting money or anything of value on the outcome of all or any part of any game of skill.

• Singh contradicted his own words to another inmate. When asked about this he again stated these words were simply boasting to another inmate in a private letter. Therefore his defense was that he was lying when he wrote his letter but claimed to be telling the truth at the hearing.

(ECF No. 25, ¶13; No. 24-2 at 6-7.)

On June 11, 2012, based on his findings, Lieutenant Gloudemans found Singh guilty of violating Wis. Admin. Code DOC §§ 303.22A (Escape (attempt)), 303.32 (Enterprise and Fraud), and 303.60 (Gambling). (ECF No. 19, ¶41.) Lieutenant Gloudemans gave Singh a disposition of 210 days Disciplinary Separation due to Singh's attitude toward the offense, the risk of disruption, and to hold him accountable for his actions. (ECF No. 19, ¶¶42-43.)

Threats and statements of escape made by inmates in letters to other inmates are taken very seriously within the DOC and are routinely addressed and investigated. (ECF No. 46, ¶152.) Statements of possible escape plans are harmful to DOC institutions such as STF and the community because they use the institution's staff time and limited resources investigating the statements instead of for the regularly conducted business of the institution. (ECF No. 46, ¶154.)

### C. Program Review of Custody Status

On June 11, 2012, following Gloudemans's findings and disposition, Singh was referred for Program Review under Wis. Admin. Code DOC Ch. 302. (ECF No. 19, ¶93.) Pursuant to Wis. Admin. Code DOC § 303.65(5), if the hearing officer finds an inmate guilty, the inmate may be referred to classification to review the inmate's custody level or location. (ECF No. 19, ¶92.) A Reclassification Hearing was held on June 26, 2012. (ECF No. 19, ¶94.)

Karpinski was the Offender Classification Specialist for the reclassification hearing. (ECF No. 19, ¶95.) The Program Review Committee also included Captain Weber and Supervisor Howard. (ECF No. 19, ¶96.) The committee considered the conduct report finding of guilty, the recommendation of Singh's social worker Michael Burman, and Singh's "AODA"(Alcohol and Other Drug Abuse) needs. (ECF No. 19, ¶¶98-101.) Pursuant to Wis. Admin. Code DOC § 302.07, the committee recommended elevating Singh's status to medium custody with transfer to RCI. (ECF No. 19, ¶¶102,

104.)  The committee noted that Singh's conduct occurred in a minimum security setting and that elevation to medium custody for a period of monitoring was appropriate. (ECF No. 19, ¶103.)  Due to Singh's segregated status, his custody status was temporarily elevated to maximum custody and he was transferred to RCI for temporary placement on the Restrictive Housing Unit (segregation), which is located at RCI.  (ECF No. 19, ¶91.)

Singh received a disposition of 210 days disciplinary separation on June 26, 2012. He was released from segregation on October 9, 2012, after serving half of the 210 days. (ECF No. 19, ¶¶132-133.)

### D.  Additional Conduct Reports

On March 25, 2014, Singh was issued Conduct Report 2318139 for violating Wis. Admin. Code DOC §§ 303.63 (Violations of Institution Policies and Procedures) and 303.47 (Possession of Contraband – Miscellaneous) following a random search of his cell. (ECF No. 19, ¶134.)  An officer found 123 packets of Kool Aid drink mix in Singh's locker, which violates institution rules.  (ECF No. 19, ¶135.) A disciplinary hearing was conducted by Howard.  (ECF No. 19, ¶136.)  Howard found Singh guilty of violating institution rules and gave him a disposition of ten hours extra duty and restitution for the 123 Kool Aid packets.  (ECF No. 19, ¶¶138-139.)

On April 24, 2014, Singh was issued Conduct Report 2316037 for violating Wis. Admin. Code DOC §§ 303.40 (Unauthorized Transfer of Property), 303.47 (Possession of

Contraband – Miscellaneous), 303.62 (Inadequate Work Performance), and 303.63 (Violations of Institution Policies and Procedures). (ECF No. 19, ¶145.) Singh was observed carrying towels away from the laundry room while working there. (ECF No. 19, ¶146.) When questioned, he removed various items from the towels and tried to place them in his waist band. (ECF No. 19, ¶146.) The items included ten emery boards, three stamped envelopes and four stamps. (ECF No. 19, ¶146.) Another disciplinary hearing was conducted by Howard, who found Singh guilty of violating institution rules and sentenced him to five days of loss of dayroom. (ECF No. 19, ¶¶148-49.) Howard does not know what happened to the contraband items. (ECF No. 19, ¶149.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact is or is not genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

The defendants contend that they are entitled to summary judgment on all of Singh's claims. Singh seeks summary judgment on two of his claims – his claim that he was issued Conduct Report 1955474 and transferred to RCI in retaliation for writing the letter to another inmate, and his due process claim related to the disciplinary hearing on Conduct Report 19555474. With respect to his remaining claims, Singh contends that the court should deny the defendants' motion for summary judgment.

### A. Conduct Report 1955474 and Transfer to RCI

#### 1. Retaliation Claim

Singh contends that the defendants improperly issued him Conduct Report 1955474 and transferred him to RCI in retaliation for writing a letter, which he claims was activity protected by the First Amendment. He claims that the defendants' actions in response to the letter were exaggerated and retaliatory. (Singh's summary judgment materials link his retaliation claim with his disciplinary hearing due process claim. His argument that the defendants' response to his letter was exaggerated and retaliatory is based in part on his contention that the conduct report disposition was not support by "some evidence." This lack of "some evidence" argument is key to Singh's due process claim. Despite the fact that the retaliation and due process claims are both based on Singh's letter, the court considers the claims separately for the sake of clarity and because the standard for each claim is different.)

The defendants contend that Singh was issued Conduct Report 1955474 based on the contents of his letter to another inmate which referenced a potential escape attempt, gambling, and charging inmates for typing services. The defendants further contend that Singh was transferred to RCI because the Program Review Committee recommended an elevated custody level based on his poor conduct, the nature of his misconduct, which included attempted escape behaviors, and AODA residential needs.

To survive summary judgment on a First Amendment retaliation claim, Singh needs to present evidence from which a reasonable jury could conclude that (1) he engaged in protected First Amendment activity, (2) he suffered a deprivation that

would likely deter future First Amendment activity, and (3) the protected activity caused the deprivation. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The question of whether a prisoner's speech is protected by the First Amendment is governed by the standard established in *Turner v. Safley*, 482 U.S. 78, 89 (1987), under which a prison regulation that impinges on prisoners' constitutional rights is valid if "reasonably related to legitimate penological interests." *Watkins*, 599 F.3d at 794-95 (citing *Bridges*, 557 F.3d at 551). In applying the *Turner* standard to a First Amendment retaliation claim, the court examines whether the prisoner engaged in speech in a manner consistent with legitimate penological interests. *Id.* (citing *Bridges*, 557 F.3d at 551) (concluding that a prisoner's speech, which provided an account of an incident where prison officials were alleged to have mistreated an inmate who was gravely ill, was not inconsistent with legitimate penological interests)).

First, it is well settled that prisons have a legitimate interest in deterring and preventing inmates from escaping. Escape plans are not protected speech and are not sufficient to support a retaliation claim. *See Procunier v. Martinez*, 416 U.S. 396, 412-13 (1974), overruled on other grounds, *Thornburgh v. Abbot*, 490 U.S. 401, 413-14 (1989) (recognizing that a prisoner's escape plan is a "most obvious example" of material that is fundamentally contrary to the legitimate penological objectives of preserving discipline and maintaining institutional security against escape). Therefore, Singh's

argument that he was retaliated against in response to him exercising protected First Amendment activity is without merit.

With regard to Singh's argument that the defendants' response to his letter was exaggerated, Singh claims that, since he no longer held the position at the RCI garage at the time of the disciplinary hearing, he was no longer a threat to escape and the resources to combat the threat did not have to be used. However, having determined that Singh's letter was not protected First Amendment activity, this argument adds nothing to his retaliation claim. In any event, it is undisputed that incidents involving statements of escape are taken very seriously at STF. It is also undisputed that statements of possible escape plans are harmful to STF and the community because they use the institution's staff time and limited resources investigating the claims. The determination that Singh's letter was a security risk even though he did not have the prison job at the time of the investigation is a prison management issue better left to prison management. *See Shaw v. Murphy*, 532 U.S. 223, 230 (2001) ("[P]rison officials are to remain the primary arbiters of the problems that arise in prison management."). Indeed, the question is not whether the escape was carried out but whether it was reasonable to perceive the letter as a threat to prison security. *See Van den Bosch v. Raemisch*, 658 F.3d 778, 788 (7th Cir. 2011).

Singh's letter was not protected speech and his retaliation claim fails as a matter of law.

### 2. Due Process Claim

Singh contends that the conduct report was not supported by any evidence of an escape attempt. He asserts that two facts demonstrate that the defendants' response to his letter was exaggerated.  Singh asserts that, first, the fact that he adamantly denied that he ever planned an escape attempt and argued that the letter actually demonstrated lack of intent, shows that the defendants' response to his letter was exaggerated. Second, Singh contends that the fact that the conduct report confirmed that he had voluntarily quit his RCI garage job months earlier and thus any alleged attempted escape was a factual impossibility, also demonstrates that the defendants' response to his letter was exaggerated."  According to Singh, because determinations of early release are primarily based on major conduct reports, by issuing, determining and upholding an unsupported conduct report, the effect of which was to impact Singh's ability to obtain early release, Gegare, Gloudemans and Avila violated his right to due process.

The defendants contend that Singh fails to state an actionable due process claim because he simply alleges that the substantive evidence was not sufficient to support a guilty finding on his conduct report. Citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974), they argue that the full panoply of due process rights which a defendant has in a criminal prosecution do not apply to prison disciplinary proceedings.  The defendants

Case 2:14-cv-00837-WED   Filed 11/20/15   Page 14 of 31   Document 54

point out that Singh does not allege that he was deprived of those due process rights which a defendant has in a prison disciplinary proceeding.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  In disciplinary proceedings, due process requires that prisoners be given: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action."  *Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (citation omitted); *see also Wolff,* 418 U.S. at 563-67).  Procedural due process also requires prison disciplinary officials to disclose material exculpatory evidence to the charged offenders. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003).  A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) show that he has a liberty or property interest that the state has interfered with; and (2) show that the procedures he was afforded were constitutionally deficient.  *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

In addition to procedural safeguards, the disciplinary decision must be supported by at least "some evidence."  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*,

472 U.S. 445, 455 (1985). This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . . ." *Id.* (quoting *United States ex rel. Vajtauer v. Comm. of Immigration*, 273 U.S. 103, 106 (1927)). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56 (citation omitted). While the evidence must bear some indicia of reliability, once this threshold has been crossed the court's inquiry ends and it will not reverse the disciplinary board's decision. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) (citing *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989)).

The parties have not addressed whether Singh had a liberty interest under the circumstances presented here. Assuming, without deciding, that Singh did have a liberty interest in remaining free from segregation for the 105 days he served, *see Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015) (a period of segregation "considerably shorter" than six months may, depending on the conditions of confinement and on any additional punishments, establish a violation), the record reveals that Singh received all the process that was due and that Gloudeman's decision on Conduct Report 1955474 was supported by "some evidence."

In support of his argument that Gloudeman lacked "some evidence" to support a guilty finding for attempted escape based on the contents of his letter, Singh contends that courts have consistently rejected the proposition that he says the defendants

16

advocate here, that is, that any "loose talk" by inmates concerning the subject of escape, no matter how brief or nebulous, is sufficient for discipline as an attempted escape. He contends that, in the absence of an actual escape attempt, disciplining an inmate for "attempted escape" is an exaggerated response to otherwise legitimate prison security concerns. Singh cites to *Freitas v. Auger*, 837 F.2d 806, 811 (8th Cir. 1988), and *Burnsworth v. Gunderson*, 179 F.3d 771 (9th Cir. 1999), in support of his argument.

In *Freitas*, based on a memorandum concerning polygraph results and two confidential statements of informants, a prisoner was found guilty of conspiring to assist others to escape. 837 F.2d at 808. The court stated that, while the prisoner "was not and could not have been disciplined simply for talking about an escape[,]" there was "some evidence showing that an escape was being planned and that Freitas had encouraged the furtherance of this plan or assisted in its preparation, although he was not going to participate in it." *Id.* at 811. The court also stated that, while the prisoner's statement that "he would himself escape if given a good opportunity because of his fifty year sentence," by itself, would not constitute "some evidence," when this evidence was combined with the statements of the confidential informants which directly implicated the prisoner for assisting in the plans, there was "some evidence." *Id.* at 811-12.

In *Burnsworth*, the Ninth Circuit Court of Appeals accepted the district court's determination that an inmate's statement that if he were returned to the general population he would be forced to "hop the fence and run all the way to Tuscon" did not

constitute sufficient evidence of escape. 179 F.3d at 772; *see also Linea v. Lane*, 882 F.2d 1171, 1176 (7th Cir. 1989) (polygraph evidence, without more, did not support a finding that a prisoner aided and abetted an escape).

Here, Singh was charged with attempted escape in violation of Wis. Admin. Code § DOC 303.22A (2006), which is the combination of § DOC 303.22 (Escape) and § DOC 303.06 (Attempt) (2006).[2] Under § DOC 303.22(1), an inmate who does or attempts to do any of the following without permission is guilty of an offense: (a) leaves an institution. (b) leaves the custody of a staff member while outside of the institution. (c) does not follow the inmate's assigned schedule, or (d) leaves the authorized area to which the inmate is assigned. Under § DOC 303.06(1), an inmate is guilty of attempt to violate a rule if either of the following are true: (a) the inmate planned to do something which would have been a rule violation if actually committed, or (b) the inmate did acts which showed a plan to violate the rule when the acts occurred.

Gegare charged Singh with attempted escape based on the statements in his letter. Specifically, Singh stated that it would not be hard to escape if he really wanted to because he walked the perimeter of the institution, that if he did not have work release or the appeal to hope for, he would attempt to escape by crossing the street and getting on a train, and that "I really think I might walk off if I don't get some love on appeal. We'll see." Gloudeman determined that, "[t]hese thoughts expressed by Singh

---

[2] The number used for attempts in recordkeeping and conduct reports shall be the offense's number plus the suffix A. Wis. Admin. Code § DOC 303.06(2) (2006).

showed that he had previous thoughts of escaping and even developed a plan on how to execute his escape attempt"; "Singh admitted to writing the letter containing thoughts and actions of how to escape from STF"; and "it was clear that [Singh] was having thoughts of escaping, or attempting to escape from STF's custody." (ECF No. 25, ¶13.)

Singh's letter satisfied the level of proof needed to satisfy the "some evidence" standard. Not only did Singh have thoughts of escaping, but his letter shows that he also had a plan for how to do it, which qualifies as a violation under § DOC 303.06(1)(a) (inmate guilty of an attempt to violate a rule if the "inmate planned to do something which would have been a rule violation if actually committed"). The court will not second guess Gloudemans's conclusion that Singh was not being truthful when he said that he was only joking in his letter and that his statements to the inmate were not meant to be taken seriously. *See Hill*, 472 U.S. at 455.

In addition to the escape attempt charge, Conduct Report 1955474 charged Singh with enterprise and fraud, and with gambling, and Lieutenant Gloudemans also found Singh guilty of those violations at the disciplinary hearing. Singh contends that the defendants lack "some evidence" to support the guilty determinations for those violations.

With regard to the gambling charge, Singh's letter stated, "No one will play me in chess for canteen in this whole joint. Man, I burned that one up quick when I beat

this guy 10 times in a row, a buck a game, in about an hour."  (ECF No. 25, ¶ 13.)  Based on these statements, Lieutenant Gloudemans found Singh guilty of gambling (§ DOC 303.60) because:

> Any inmate who is involved in gambling, gambles or possess any gambling materials is guilty.  "Gambles" includes betting money or anything of value on the outcome of all or any part of any game of skill.
>
> Singh contradicted his own words to another inmate.  When asked about this he again stated these words were simply boasting to another inmate in a private letter.  Therefore his defense was that he was lying when he wrote his letter but claimed to be telling the truth at the hearing.

(ECF No. 25, ¶ 13.)

Singh contends that the fact that his letter states that he did gamble, but that he denied gambling at the disciplinary hearing, demonstrates that Lieuetenant Gloudemans lacked "some evidence" to support the guilty finding for gambling.  Here, however, Singh's statements in his letter support Lieutenant Gloudemans' determination that Singh was guilty of gambling.  Lieutenant Gloudemans simply did not believe Singh's hearing testimony that he did not gamble.  The court will not second-guess Gloudemans' findings.  *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996).

In sum, Gloudemans' guilty findings on the attempted escape and gambling charges are supported by the requisite "some evidence."  The guilty findings for these charges supported the 210-day segregation sentence.  (Singh also contends that the defendants do not show "some evidence" that he was guilty of the other conduct report

charge, enterprising. However, the court need not reach this argument because the guilty findings for attempted escape and gambling supported the 210-day segregations disposition. See Wis. Admin. Code § DOC 303.84, Table, Schedule of Penalties (2006).)

The court will grant the defendants' motion for summary judgment on Singh's due process claim.

## B. Access to the Courts

On June 5, 2012, Singh was placed in temporary lock-up at RCI pending a review of his letter and investigation of the statements made in the letter. (ECF No. 19, ¶46.) However, Singh's supervision was maintained by STF pending a Classification Review. (ECF No. 19, ¶47.) Because Singh's supervision was still under STF, the Property Department at STF maintained his property. (ECF No. 19, ¶48.) All inmates coming from STF must wait until a Program Review Classification is completed to obtain their property. (ECF No. 19, ¶49.) No property is transferred until supervision transfer is approved. (ECF No. 19, ¶50.)

On June 26, 2012, after a Program Review Classification hearing, Singh's permanent custody and supervision was transferred to RCI. (ECF No. 19, ¶53.) On or about June 29, 2012, Singh's property was sent to RCI. (ECF No. 19, ¶54.) After the RCI property department staff inventoried and processed his property, Singh would have been provided with that part of his property that is allowed pursuant to his status, which would have included his legal paperwork. (ECF No. 19, ¶¶55-56.)

Case 2:14-cv-00837-WED   Filed 11/20/15   Page 21 of 31   Document 54

Singh was the plaintiff in Waukesha County Case Number 12CV664, a certiorari action challenging the revocation of his probation. (ECF No. 49, ¶1.) After Singh was placed in segregation, on July 9, 2012, the action was dismissed without prejudice for failure to serve[3]. (ECF No. 49-1, Exh. 1 at 2.) Singh made a number of requests and filed a number of inmate complaints for his legal work, both prior to and after the dismissal of his lawsuit. (ECF No. 49, ¶3.) His requests included the details of the Waukesha case and explained that he needed his legal work to prosecute his case. (ECF No. 49, ¶4.)

Singh contends that the above conduct on the part of the defendants deprived him of his constitutional right to meaningful access to the courts. The defendants contend that Singh's access to the courts claims fail both factually and as a matter of law. Singh withdraws his claim based on his direct appeals in case numbers 12AP2709-CR and 12AP2710-CR. (ECF No. 39/40 at 5.) However, Singh contends that the court should deny the defendants' summary judgment motion as to his access to the courts claims based on his action for a writ of certiorari, *Singh v. Schwarz*, Waukesha County Case Number 12-CV-664, and his habeas action, *Singh v. Kemper*, 2014 WI App 43, 353, Wis. 2d 520, 846 N.W.2d 820.

---

[3] Singh's proposed fact states that the certiorari action was dismissed for "failure to prosecute," and he refers to attached "CCAP docket." (ECF No. 49 ¶ 2.) The attached docket is an excerpt from "Court Record Events for 2012CF000664 in Waukesha County." (ECF No 49-1, Exh 1.) This docket sheet exhibit was obtained from the Wisconsin Court System's Circuit Court Access, which provides access to the public records of the Wisconsin Circuit Courts (wcca.wiscourts.gov). (ECF No. 49-1, Exh. 1.) The docket entry for July 9, 2012, states the court dismissed the matter without prejudice for failure to serve. (*Id.*)

Prisoners have a constitutional right to meaningful access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821, 823 (1977); *Lehn v. Holmes*, 364 F.3d 862, 865-66 (7th Cir. 2004). Prison authorities, therefore, must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. While the right of access to the courts requires prison officials to provide prisoners with the necessary tools "to attack their sentences, directly or collaterally," and "to challenge the conditions of their confinement," *Lewis v. Casey*, 518 U.S. 343, 355 (1996), it is not an abstract, freestanding right to legal assistance, *id.* at 351. A prisoner asserting a denial of access to the courts claim must show an "actual injury" in the form of interference with a "nonfrivolous legal claim." *Id.* at 353. "In other words, the right of access to the courts is tied to and limited by a prisoner's right to 'vindication for a separate and distinct right to seek judicial relief for some wrong.'" *Lehn*, 364 F.3d at 865 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). To establish injury an inmate need not show that if he had been provided with adequate legal facilities he would have prevailed in a lawsuit. *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998); *see also Hoard v. Reddy*, 175 F.3d 531, 533 (7th Cir. 1999). Rather, he need only show that he was prevented "from litigating a nonfrivolous case." *Walters*, 163 F.3d at 434.

Singh filed his writ of certiorari action, *Singh v. Schwarz*, Waukesha County Case Number 12-CV-664, on February 24, 2012. He had 90 days, or until May 24, 2012, to

serve a copy of the writ on the defendant.  *See* Wis. Stat. § 801.02(1), (5).  Singh

transferred from STF to RCI on June 5, 2012, and his property was transferred to RCI on

June 29, 2012.  He contends that lack of access to his legal property for those twenty-

four days caused his petition to be dismissed for lack of prosecution.  (As described

above, the petition was dismissed without prejudice for lack of service, not for lack of

prosecution.)  He also contends that, even after the case was dismissed and his legal

work was at RCI, prison officials denied him access to his legal materials because he

was in segregation and only permitted to work on open cases.

The twenty-four-day period in which Singh did not have access to his legal

property, June 5 through June 29, 2012, occurred *after* the deadline for service had

passed.  Thus, Singh's transfer to RCI was not the cause of the dismissal of his certiorari

action for lack of service.  Thus, he has not established actual injury related to the

dismissal of his certiorari action.

Turning to Singh's habeas action, he did in fact prevail in part in that action.  *See*

*Singh v. Kemper*, 353 Wis. 2d 520 (Ct. App. 2014).  In that case, the Wisconsin Court of

Appeals held that the retroactive application of a law first enacted after Singh

committed the crimes which were the subject of his appeal violated the ex post facto

clauses of the United States and Wisconsin Constitutions by denying him the

opportunities for early release from prison which existed when he committed the

offenses.  *Id.* at 523-24.  The appeals court also determined that Singh had not met his

burden of showing that provisions of the new law adjusting the role of the sentencing court violated the ex post facto clauses, and that Singh was not entitled to "positive adjustment time" for his time in jail. *Id.* at 524.

Singh alleges that his limited law library access as well as limited access to legal materials while in segregation impeded his ability to research his ex post facto claim and "so delayed his filing." (ECF No. 39/40 at 7.) However, Singh has not presented evidence as to why his alleged limited library time caused delays; it is not clear what filing was delayed and why it was delayed. Moreover, mere delay in a case does not, without more, establish actual injury. *See Lewis*, 518 U.S. at 351; *Gentry v. Duckworth*, 65 F.3d 555, 559 (7th Cir. 1995) (prisoner must show actual substantial prejudice to specific litigation).

As a result of Singh's failure to show actual injury, the court will grant the defendants' motion for summary judgment on Singh's access to the courts claims.

## C. Property

Singh alleges that Howard unlawfully ordered him to pay $10 restitution after a disciplinary hearing regarding Singh's possession of 123 packets of Kool Aid. (ECF No. 1 at 4; ECF No. 19, ¶¶ 135, 138-39.) He also alleges that his emery boards, stamped envelopes, and stamps were unlawfully confiscated after Howard found him guilty of possessing the items as contraband. (ECF No. 1 at 4; ECF No. 19, ¶¶ 146, 149.) Singh claims that the restitution order and the destruction of his property were done contrary

to DOC procedure. Thus, he is, in effect, arguing that the actions were "random and unauthorized." *See Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804-05 (7th Cir. 2010).

"When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Id.* (quoting *Rivera-Powell v. New York City Bd. Of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). When a plaintiff alleges a procedural due process claim based on "random and unauthorized" conduct, he must either avail himself of state post-deprivation remedies "or demonstrate that the available remedies are inadequate." *Id.* (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996)).

Wisconsin affords procedures that can address random, unauthorized deprivations of property by state officers and officials. It provides tort remedies for those whose property has been converted or damaged by another. Wis. Stat. §§ 893.35 (action to recover personal property after wrongful taking, conversion, or wrongful detention), 893.51 (action for damages resulting from wrongful taking, conversion, or wrongful detention of personal property), and 893.52 (action for damages from injury to property); *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (inmate-complaint review system, certiorari review under Wisconsin law, and Wisconsin tort remedies against prison officials are adequate remedies for deprivation of good-time credits); *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 871 (7th Cir. 1983) (Wisconsin tort remedies

are adequate for deprivation of property resulting from sheriff's execution of outdated writ of restitution).

Thus, the defendants are entitled to summary judgment on Singh's due process property claims.

### D. Conditions of Confinement

In his complaint Singh contends that the conditions of confinement in segregation were "atypical." (ECF No. 1 at 3.) He alleges that, due to over-crowding conditions, he was required to sleep on the floor, in a double-occupied single cell, while "locked down for 23 ½ hours a day." (*Id*.) Singh also alleges that ants, roaches, and other bugs ran around the floor of the cell. (*Id*.) He further states that cleaning supplies were only available once per week, even if there was a spill. (*Id*.)

The defendants contend that Singh's conditions of confinement claim fails because Singh does not allege that any defendant was aware of the alleged conditions. The defendants also contend that the claim fails because the alleged conditions, even if taken as true and even if Singh could show that any defendant was deliberately indifferent to them, do not rise to the level of a constitutional deprivation.

In response, Singh contends that summary judgment should be deferred and that he should be permitted to amend his complaint on this claim. According to Singh, upon re-reading his complaint, he realizes that he did not detail the exact injury that he

Case 2:14-cv-00837-WED   Filed 11/20/15   Page 27 of 31   Document 54

suffered. He requests that the court allow him to file an amended complaint specifying his injuries on this claim, as in *Hines v. Sheahan*, 845 F. Supp. 1265 (N.D. Ill. 1994).

The undisputed facts reveal that, while in segregation, if Singh slept on the floor he would have slept on a mattress and not directly on the floor. (ECF No. 19, ¶124.) The facts also reveal that institution staff provide inmates with cleaning supplies on a weekly basis and expect them to clean their cells weekly. (ECF No. 19, ¶¶119-120.) These facts, together with Singh's complaint's allegations, do not amount to a sufficiently serious objective deprivation under the Eighth Amendment. *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (inmate's allegations of cockroaches in cell and an infestation in the unit were insufficient to state a conditions of confinement claim). Even if the conditions did implicate the Eighth Amendment, Singh's failure to show that any defendant was aware of the bugs in his cell dooms his claim.

In light of the foregoing, the court will deny Singh's request to amend the complaint to specify injuries he suffer as a result of the alleged conditions. In any event, the court would not permit an amendment in this case at this late date because to do so would prejudice the defendants. *See Park v. City of Chi.*, 297 F.3d 606, 612 (7th Cir. 2002). The *Hines* case which Singh references was at the motion to dismiss stage, not the summary judgment stage, as is the case here. Accordingly, the court will grant the defendants' motion for summary judgment on this claim.

### E. Religion Claims

Wisconsin Department of Corrections Division of Adult Institution policies administer religious programming through the Umbrella Religion Group structure, identifying eight faith traditions to accommodate groups with similar beliefs and practices. (ECF No. 19, ¶63.) Sihkism is covered under the Eastern Religious group. (ECF No. 19, ¶71.) Singh designated his religious preference as Eastern Religion on January 4, 2012. (ECF No. 19, ¶73.) DOC inmates are permitted to possess approved religious property associated with their designated religious preference unless the item presents a threat to the order and safety of the institution. (ECF No. 19, ¶78.) If an inmate would like to have an accommodation or receive property to practice his religious preference, the inmate must submit a DOC-2075 Request for New Religious Practice or Property. (ECF No. 19, ¶83.) Singh did not submit a DOC-2075 requesting any accommodations or property. (ECF No. 19, ¶88.)

Singh's religion-based claims are based on allegations that his requests to wear specific headwear and a steel bracelet were denied and he was therefore unable to participate in core Sikh practices. In his complaint, Singh sought declaratory relief asking that the DOC officially recognize Sikhism and that it implement appropriate policies to permit its free expression.

The defendants contend that Singh's First Amendment religious freedom and Religious Land Use and Institutionalized Person Act (RLUIPA) claims fail because he

has provided no evidence that any defendant was aware that he ever requested a specific religious accommodation.[4]  With regard to his RLUIPA claim, the defendants contend that they are entitled to summary judgment because Singh has been released and any request for prospective relief is moot.  In response, Singh contends that declaratory relief and nominal damages are not moot, citing *Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008).

Singh's requests for injunctive relief are moot because he is no longer incarcerated.  *See Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009) (citing *Young v. Lane*, 922 F.2d 370, 373 (7th Cir. 1991) (concluding that past exposure to illegal conduct at a prior facility, without threat of repetition, did not present a pending case or controversy that might warrant injunctive relief); *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012).  In any event, although Singh alleges in his complaint that he requested religious items from Security Director Aldana, he does not indicate that he ever submitted a DOC-2075 Request for New Religious Practice or Property form.  It is undisputed that, if an inmate would like to have an accommodation or receive property to practice his religious preference in addition to what is allowed under policy, he must submit such a form.

---

[4] Initially, the defendants argued that Singh's claim fails because he failed to exhaust administrative remedies.  The defendants, however, correctly withdrew this argument and now acknowledge that, because Singh was not a prisoner when he filed this lawsuit, the Prison Litigation Reform Act's exhaustion requirement, 42 U.S.C. § 1997e(a), does not apply.

Based on these factors, the court will grant the defendants' summary judgment motion as to Singh's religious claims.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 17) is **granted**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for partial summary judgment (ECF No. 40) is **denied**.

Dated at Milwaukee, Wisconsin this 20th day of November, 2015.

WILLIAM E. DUFFIN
U.S. Magistrate Judge